UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 23-24695-CIV-WILLIAMS/GOODMAN

CLAUDIA R. LUIS GONZALEZ and
ROBERTO LUIS REYES,

                    Plaintiffs,

v.

Merrick B. Garland, Attorney General
of the United States, in his official
capacity, *et al.*,

                    Defendants.

_____/

### REPORT AND RECOMMENDATIONS ON MOTION TO DISMISS

In this action brought under the Administrative Procedures Act ("APA"), 5 U.S.C.

§ 701, *et seq.*, Attorney General Merrick B. Garland (in his official capacity), Secretary of

State Antony J. Blinken (in his official capacity),[1] Deputy Chief of Mission in Havana,

---

[1]      In a footnote, Defendants argue that Secretary Blinken is not a proper party to this lawsuit because "Plaintiffs do not seek review of any Department of State policy, rule, practice, or regulation[.]" [ECF No. 8, p. 1 n.1]. Plaintiffs do not discuss this argument in their response.

"[A]ddressing legal arguments in footnotes is an incorrect method to present substantive arguments on the merits or otherwise request relief from the Court." *Sony Music Ent. v. Vital Pharms., Inc.*, No. 21-22825-CIV, 2022 WL 4771858, at *13 (S.D. Fla. Sept. 14, 2022). At the same time, the failure to respond to an argument concedes the point. *See Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) ("'[A] party's failure to

Cuba Elias Baumann (in his official capacity), and the United States of America (collectively, the "Government" or "Defendants") seek to dismiss Claudia R. Luis Gonzalez ("Gonzalez") and Roberto Luis Reyes' ("Reyes" and collectively, "Plaintiffs") Complaint [ECF No. 1] "for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6)." [ECF No. 8]. Plaintiffs filed a response in opposition [ECF No. 10] and Defendants filed an optional reply [ECF No. 12].

United States District Judge Kathleen M. Williams referred the instant motion to the Undersigned for a Report and Recommendations. [ECF No. 11]. For the reasons discussed in detail below, the Undersigned **respectfully recommends** that Judge Williams **grant** Defendants' motion [ECF No. 8] and **dismiss** Plaintiffs' Complaint [ECF No. 1].

## I.    Background

Gonzalez is a United States citizen. [ECF No. 1, ¶ 7]. Her father, Reyes, is a Cuban citizen, *id.* at ¶ 6, residing in Cuba. On September 18, 2020, Gonzalez filed an I-130 visa

---

respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed.'") (quoting *Kramer v. Gwinnett Cnty., Ga.*, 306 F. Supp. 2d 1219, 1221 (N.D. Ga. 2004) (alteration in original)); *Five for Ent. S.A. v. Rodriguez*, No. 11-24142-CIV, 2013 WL 4433420, at *14 (S.D. Fla. Aug. 15, 2013) ("A failure to address issues in response to a motion is grounds for finding that the claims have been abandoned."). In any event, notwithstanding the both-parties-made-procedural-errors scenario, the Undersigned's recommendation that the District Court dismiss Plaintiffs' Complaint [ECF No. 1] encompasses the single count asserted against all Defendants, including Secretary Blinken.

petition ("Petition") on behalf of Reyes with the U.S. Citizenship and Immigration Services ("USCIS"). *Id.* at ¶ 21. USCIS purportedly approved the Petition on December 22, 2020. *Id.* at ¶ 23. Thereafter, the matter was transferred to the National Visa Center ("NVC"), which confirmed receipt on January 6, 2021 and "stated that it would forward the application to the U.S. Embassy in Cuba, ('U.S. Embassy')." *Id.*

On November 2, 2022, the State Department conducted Reyes' visa interview. *Id.* at ¶ 24. "After the November 2, 2022 interview, the U.S[.] Embassy 'refused' [the] [P]etition and issued a 221(g) [letter] requesting more documents. . . . [Reyes] promptly acquired the necessary documents and sent them to the U.S. Embassy on December 3, 2022." *Id.* The U.S. Embassy acknowledged receipt of the documents on December 5, 2022. *Id.* Per Plaintiffs, the "[P]etition has been in 'administrative processing' since November 2, 2022." *Id.* at ¶ 27.

As a result, Plaintiffs filed a one-count Complaint alleging that Defendants "unlawfully withheld and unreasonably delayed with respect to the adjudication of a US citizen parent's visa (also known as an IR5 visa), which was filed by [Gonzalez] on behalf of her father, [Reyes]." *Id.* at 1–2. Plaintiffs ask the Court to: (1) require Defendants to adjudicate the Petition; (2) award reasonable attorney's fees and costs pursuant to the Equal Access to Justice Act ("EAJA"), 5 U.S.C. § 504 and 28 U.S.C. § 2412; and (3) grant any further relief deemed just and proper. *Id.* at 10 (Request for Relief).

Defendants maintain that "[they] *have* adjudicated and refused [ ] Reyes' parental visa application, exactly in accordance with their non[-]discretionary obligation to do so" and "Plaintiffs now seek judicial review of a consular decision of the sort that is immune from judicial review under the consular non-reviewability doctrine" and, as such, this "relief is unavailable to [ ] Plaintiffs." [ECF No. 8, p. 2 (emphasis added)]. Defendants note that the 221(g) letter "informed [ ]. Reyes that his visa application was refused under Section 221(g) of the [Immigration and Nationality Act ('INA')]." *Id.* at 4. Thus, they contend that "what Plaintiffs request this Court to compel is not an adjudication, but rather a **re-adjudication** of the visa application through judicial review of the refusal." *Id.* at 7 (emphasis added).

They further argue that "assuming, *arguendo*, that the visa refusal is available for judicial review, the consular officer's pace of any re-adjudication of the IR-5 visa application is not unreasonable as a matter of law." *Id.* at 2.

## II.   Applicable Legal Standards

Defendants move to dismiss pursuant to both Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

### A.   Rule 12(b)(1)

Federal courts are courts of limited subject-matter jurisdiction and must be vigilant in ensuring that they have jurisdiction over a case. "[B]ecause a federal court is powerless to act beyond its statutory grant of subject[-]matter jurisdiction, a court must zealously

insure that jurisdiction exists over a case, and should itself raise the question of subject[-]matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises." *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001).

"Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010); *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999) ("Indeed, it is well settled that a federal court is obligated to inquire into subject[-]matter jurisdiction *sua sponte* whenever it may be lacking."). Moreover, the Court always has jurisdiction to determine whether it has jurisdiction over a matter. *United States v. Ruiz*, 536 U.S. 622, 628 (2002) ("[I]t is familiar law that a federal court always has jurisdiction to determine its own jurisdiction.").

Dismissal under Rule 12(b)(1) is appropriate if a plaintiff fails to show that the Court has subject-matter jurisdiction over the lawsuit. Fed. R. Civ. P. 12(b)(1). The party invoking the Court's jurisdiction bears the burden of showing that the action falls within the Court's subject-matter jurisdiction. *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994).

**B.      Rule 12(b)(6)**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 678.

On a motion to dismiss, "the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016).

Federal Rule of Civil Procedure 8(a) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." It does not "require that a plaintiff specifically plead every element of a cause of action." *Balaschak v. Royal Caribbean Cruises, Ltd.*, No. 09-21196, 2009 WL 8659594, at *6 (S.D. Fla. Sept. 14, 2009) (citing *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001), which, in turn, cited Jack H. Friedenthal, et al., Civil Procedure, § 5.7 (2d ed. 1993) for the view that "[w]hat the pleader need not do is worry about the particular form of the statement or that it fails to allege a specific fact to cover every element of the substantive law involved.").

III.    **Analysis**

The Complaint alleges, in pertinent part, that:

24. Plaintiff [Reyes] had an interview regarding the I-130 petition in the U.S. Embassy in Cuba on November 2, 2022, over twelve (12) months ago. In total, it's been almost over three (3) years since Plaintiff [Gonzalez] began this unreasonably delayed process to bring her father to the United States to reside with her and his grandson. **After the November 2, 2022 interview, the U.S[.] Embassy "refused" Plaintiff [Gonzalez] and Plaintiff [Reyes'] petition and issued a 221(g) [letter] requesting more documents.** Plaintiff [Gonzalez] called and sent emails on November 8 to the Embassy to ask for the requested documents and by November 30, 2023[,] she received a response from the Embassy. Plaintiff [Reyes] promptly acquired the necessary documents and sent them to the U.S. Embassy on December 3, 2022.

25. On December 5, 2022, Plaintiff [Gonzalez] received an email from the U.S. Embassy, acknowledging receipt of the documents. Exhibit C. <u>Emails from the U.S. Embassy</u>.

26. **On November 2, 2022, Plaintiff [Reyes] received a letter stating that his application was refused under 221(g) because the Embassy required more information and his case was in "administrative processing" and he would be contacted when processing was completed.** *See* Exhibit D. <u>Letter from the Embassy stating that Plaintiff [Reyes'] application was in Administrative Processing</u>.

[ECF No. 1, ¶ 24–26 (underline emphasis in original; bold emphasis added)].

Plaintiffs contend that their Petition is **still pending** since "the U.S. Embassy has

not made a final determination":

Plaintiff [Reyes] received a letter stating that his application was "refused" under 221(g) stating that the U.S. Embassy required more information and his case was in "administrative processing" and that he would be contacted when processing was completed. [ECF No. 1, ¶ 25]. On November 8, 2022, Plaintiff [Gonzalez] followed up with the U.S. Embassy by phone and email to inquire about the requested documents. *Id.* She received a response on November 30 and Plaintiff [Reyes] promptly worked with her father to

gather all the necessary documents. November 30, 2022 she received a response from the Embassy. Plaintiff [Reyes] promptly acquired the necessary documents and sent them to the U.S. Embassy on December 3, 2022. On December 5, 2022, Plaintiff [Gonzalez] received an email from the U.S. Embassy, acknowledging receipt of the documents. [ECF No. 1; Exh. C]. Furthermore, as further evidence that this case is still in a pending status and has not been adjudicated, the Defendant Department of State sent an email to Plaintiff [Gonzalez] from the Immigrant Visa Unit of the U.S. Embassy in Havana, Cuba stating *that after carefully considering and reviewing all available information. . . "[a]dditional security screening is being conducted."* Exhibit A, Email from the Department of State from Immigrant Visa Unit of the U.S. Embassy in Havana stating that ". . . Additional security screening is being conducted."

[ECF No. 10, p. 7 (emphasis in original)]. Thus, they maintain that "a refusal under 221(g) is not a final decision." *Id.* at 8.

The Government's position is that Reyes' visa application *was* adjudicated on November 2, 2022, when a consular officer issued the Section 221(g) refusal. [ECF No. 8, p. 4]. According to the Government, the fact that the U.S. Embassy requested additional information from Reyes (post-refusal) does not change the fact that the Petition has been fully adjudicated:

While it is possible that additional documentation or investigation may prompt a consular officer to *revisit* a decision to refuse a visa application, **the consular officer maintains its decision to refuse the visa in the interim. In other words, the decision to refuse a visa application operates as a final decision unless and until the applicant overcomes the ineligibility**. *See* [*Tariq v. Blinken*, Civ. A. No. 21-2841, 2023 WL 2661543, at *1 (N.D. Tex. Jan. 31, 2023)] ("[T]he mere possibility that an agency might reconsider . . . does not suffice to make an otherwise final agency action nonfinal.") (quoting *Sackett v. Envtl. Prot. Agency*, 566 U.S. 120, 127 (2012)).

8

[ECF No. 8, p. 11 (emphasis added)]; *see also* [ECF No. 12, p. 2 ("[T]he consular officer's decision is final unless and until superseded by another decision, which may or may not happen at all. . . . [U]ntil a consular officer makes another decision, the visa application has been and remains refused.")].

Thus, the Government seeks to dismiss the Complaint [ECF No. 1] on the following grounds: (1) the consular non-reviewability doctrine bars judicial review of the consular officer's refusal of Reyes' visa application; (2) there is no non-discretionary duty for a consular officer to re-adjudicate an already-refused visa application; and (3) Plaintiffs have failed to state a claim for unreasonable delay under the APA.

### A.      Consular Non-Reviewability Doctrine

At the outset, Defendants contend that the Court should dismiss Plaintiffs' Complaint [ECF No. 1] pursuant to the consular non-reviewability doctrine. [ECF No. 8]. The Supreme Court has noted that:

> "For more than a century, this Court has recognized that the admission and exclusion of foreign nationals is a 'fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.'" [*Trump v. Hawaii*, 585 U.S. 667, 702, 138 S. Ct. 2392, 201 L. Ed. 2d 775 (2018)] (quoting *Fiallo v. Bell*, 430 U.S. 787, 792, 97 S. Ct. 1473, 52 L. Ed. 2d 50 (1977)). Congress may delegate to executive officials the discretionary authority to admit noncitizens "immune from judicial inquiry or interference." *Harisiades v. Shaughnessy*, 342 U.S. 580, 588–591, 72 S. Ct. 512, 96 L. Ed. 586 (1952). When it does so, **the action of an executive officer "to admit or to exclude an alien" "is final and conclusive."** *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543, 70 S. Ct. 309, 94 L. Ed. 317 (1950); *see also Dept. of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 138–139, 140 S. Ct. 1959, 207 L.Ed.2d 427 (2020); [*Kleindienst v. Mandel*, 408 U.S. 753, 765–766, 92 S. Ct. 2576, 33 L. Ed. 2d 683 (1972)]; *Nishimura Ekiu v. United*

*States*, 142 U.S. 651, 659–660, 12 S. Ct. 336, 35 L. Ed. 1146 (1892). **The Judicial Branch has no role to play "unless expressly authorized by law."** *Knauff*, 338 U.S., at 543, 70 S. Ct. 309. **The [INA] does not authorize judicial review of a consular officer's denial of a visa; thus, as a rule, the federal courts cannot review those decisions. This principle is known as the doctrine of consular non[-]reviewability**.

*Dep't of State v. Munoz*, 144 S. Ct. 1812, 1820, 219 L. Ed. 2d 507 (2024) (emphasis added; footnote omitted).[2] The Eleventh Circuit has stated that "when the doctrine of consular non-reviewability bars review of a consular official's decision, a district court should dismiss a suit challenging the decision under Rule 12(b)(6)." *Del Valle v. Sec'y of State, United States Dep't of State*, 16 F.4th 832, 838 (11th Cir. 2021).

"[The consular non-reviewability] doctrine only applies to affirmative decisions by consular officers; **it does not apply to suits challenging inaction**." *Anid Infosoft LLC v. Blinken*, No. 1:22-CV-4721-TWT, 2023 WL 7312488, at *4 (N.D. Ga. Nov. 3, 2023) (emphasis added). The doctrine "does not bar suits that merely seek to compel some agency action— regardless of the substance of that action." *Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617

---

[2]     The Supreme Court has "assumed that a narrow exception to this bar exists 'when the denial of a visa allegedly burdens the constitutional rights of a U.S. citizen.'" *Munoz*, 114 S. Ct. at 1821 (citing *Trump*, 585 U.S. at 703). However, this narrow exception does not apply here. Gonzalez, a United States citizen, does not allege in the Complaint [ECF No. 1] that her constitutional rights are being violated.

Moreover, this limited exception only "authorizes a court to ensure that a visa denial is based on a 'facially legitimate and bona fide reason.'" *Ruiz-Herrera v. Holder*, No. 1:12-CV-0194-JEC, 2013 WL 1136849, at *4 (N.D. Ga. Mar. 15, 2013) (quoting *Mandel*, 408 U.S. at 770). But, as the Government points out, "[n]owhere in the Complaint do [ ] Plaintiffs suggest that the reasons for the consular officer's [November 2, 2022] refusal of [ ] Reyes' visa application are facially illegitimate or non-bona fide." [ECF No. 8, p. 9].

F. Supp. 3d 1, 12 (D.D.C. 2022); *see also Ramizi v. Blinken*, No. 5:23-CV-000730-M, 2024 WL 3875041, at *6 (E.D.N.C. Aug. 14, 2024) (finding that doctrine of consular non-reviewability did not bar lawsuit because "[the] [p]laintiffs [were] not challenging the consular officer's refusal of [the] visa application, but rather the period of post-refusal administrative processing that has ensued after the refusal" (appeal pending)).

Here, Plaintiffs allege that "[o]n November 2, 2022, Plaintiff [Reyes] received a letter stating that his application was refused under 221(g) because **the Embassy required more information and his case was in 'administrative processing'** and he **would be contacted when processing was completed**." [ECF No. 1, ¶ 26]. Plaintiffs further allege that "[Reyes'] [P]etition has been in **'administrative processing'** since November 2, 2022." *Id.* at ¶ 27.

Moreover, the Complaint makes clear that Plaintiffs are *not* seeking judicial review of the consular officer's November 2, 2022 refusal of Reyes' visa application. Rather, they are seeking to compel the Government to *act*. In their prayer for relief, they ask that "Defendants be ordered to adjudicate Plaintiffs' [ ] visa application without delay." *Id.* at 10. Therefore, the consular non-reviewability doctrine is inapplicable here.

**B.      Non-Discretionary Duty**

Next, the Government asserts that "Plaintiffs do not, and cannot, identify any clear, non-discretionary duty for a consular officer to reconsider or re-adjudicate any specific visa application after it has already been refused." [ECF No. 8, p. 12]. In the same

vein, it argues that "[e]ven assuming, *arguendo*, that a non-discretionary duty to re-adjudicate [ ] Reyes' visa application existed, neither 22 C.F.R. § 42.81 nor any other statute or regulation specifies when any such reconsideration or re-adjudication must happen." *Id.* at 15.

It states that:

> **"a delay cannot be unreasonable with respect to action that is not required."** [*Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 n.1 (2004)]; *see* [*Zeynali v. Blinken*, 630 F. Supp. 3d 208, 212 (D.D.C. 2022)] ("Thus, **one component of either an unlawful withholding or an unreasonable delay claim under the APA, is a showing that the agency had a non-discretionary duty to take a discrete action.**"). Consequently, there is simply no standard against which the Court can measure whether Defendants have acted "within a reasonable time" or "unreasonably delayed adjudication," especially for the re-adjudication Plaintiffs ultimately seek in this matter. 5 U.S.C. § 555(b); 5 U.S.C. § 706(1)[.]

*Id.*

The Undersigned acknowledges that some courts have rejected the Government's position because it would necessarily mean that it can hold Reyes' visa application in "administrative processing" *ad infinitum*. *See, e.g., Farahani v. Laitinen*, No. 1:23-CV-922, 2024 WL 2785043, at *4 (M.D.N.C. May 30, 2024) (noting that the Government's position "would, in effect, permit administrative processing to carry on indefinitely without judicial review").

Nonetheless, after the parties filed their briefs, the United States Court of Appeals for the District of Columbia Circuit decided *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024) (*per curiam*). Although *Karimova* is a non-binding

unpublished decision from another circuit, the Undersigned finds its reasoning persuasive. *See Ramizi*, 2024 WL 3875041, at *8 ("*Karimova* is unpublished and non-binding. But the court finds its reasoning persuasive and adopts it for purposes of this order.").

Moreover, it undermines some of the earlier D.C. district court cases which Plaintiffs rely on to support their argument that the 221(g) letter was a temporary refusal and not a final adjudication. *See Sharifishourabi v. Blinken*, No. CV 23-3382 (RC), 2024 WL 3566226, at *4–5 (D.D.C. July 29, 2024) ("Until recently, the [c]ourt would be inclined to disagree with [the Government's] characterization. After all, courts have consistently held that where, as here, a visa 'application is still undergoing administrative processing,' the State Department's 'decision is not final' 'even where a refusal has been relayed.'" . . . . The [D.C.] Circuit's recent, unpublished decision in *Karimova* . . . . casts doubt on the accuracy of the reasoning in those decisions."); *Ibrahim v. Spera*, No. CV 23-3563 (ABJ), 2024 WL 4103702, at *3 (D.D.C. Sept. 6, 2024) ("While it troubles this [c]ourt, one cannot read *Karimova* as saying anything other than **a 221(g) refusal and placement in administrative processing was a conclusion**." (emphasis added)).[3]

---

[3]    At least one D.C. district court has declined to follow *Karimova*. *See Hajizadeh v. Blinken*, No. CV 23-1766, 2024 WL 3638336 (D.D.C. Aug. 2, 2024). But that decision does not engage in a substantive discussion of *Karimova* and merely states that "[t]his court has considered *Karimova* but declines to follow it." *Id.* at *3 n.3.

In *Karimova*, as in the instant case, a consular officer interviewed the plaintiff and officially "refused" her application but "placed her application in administrative processing in order to verify qualifications for [her requested] visa." 2024 WL 3517852, at *2 (internal quotation marks omitted; alteration in original). Approximately a year later, the plaintiff filed suit "alleg[ing] that the consul's duty [under Section 555(b) of the APA was] not discharged by a refusal due to administrative processing, because that [was not] a final decision on the visa application." *Id.* (internal quotation marks omitted).

The district court granted the Government's motion to dismiss. The appellate court affirmed. In doing so, the *Karimova* Court noted that:

> Visa applicants "make" or "execute" their application by bringing the required paperwork to an in-person interview with a consular officer. 9 Foreign Affairs Manual ("FAM") § 504.1-3(a), (g). The consular officer's decision to refuse or grant the application is based on that interview and the application materials. *Id.* § 504.1-3(f). As relevant here, **once the applicant properly applies, the consular officer—by regulation—"must issue" or "refuse" the visa.** 22 C.F.R. § 42.81(a) (emphasis added); *see* 9 FAM § 504.1-3(g) ("Once an application has been executed, [the consular officer] must either issue the visa or refuse it."). **Consular officers "cannot temporarily refuse, suspend, or hold the visa for future action" at that point.** 9 FAM § 504.1-3(g); *id.* § 504.9-2. **There are no exceptions to this rule relevant to this case.** *Id.* § 504.1-3(i)(1); *id.* § 504.11-2(A)(a).
>
> So any applicant "to whom a visa is not issued by the end of the working day on which the application is made, or by the end of the next working day [. . .] must be found ineligible[.]" 9 FAM § 504.1-3(i)(1); *id.* § 504.11-2(A)(a). The "requirement to find an applicant ineligible when a visa is not issued applies even when" more information might show the applicant to be eligible. *Id.* § 504.1-3(i)(1). **"There is no such thing as an informal refusal or a pending case once a formal application has been made."** *Id.* § 504.1-3(i); *id.* § 504.11-2(A)(b); *see* 22 C.F.R. § 42.81(a).

>After a consular officer makes an official decision refusing to issue a visa because the applicant has not carried her burden of showing eligibility, the official may then conclude that the applicant could perhaps still receive a visa eventually if circumstances change. As a result, **the consular officer may choose to place an officially refused application in administrative processing**. Such an applicant cannot come into the United States since the consular officer has refused to issue her a visa. But that refusal may (or may not) be overcome with new information at a later date. *See* 9 FAM § 306.2-2(A)(a). **If the consular officer gets enough new information, sometimes from sources other than the applicant, the officer can determine** *sua sponte* **that the administrative processing is "completed" and may then re-open and re-adjudicate the applicant's case.** *Id.* § 306.2-2(A)(a)(2). **Unless and until that happens, though, the visa application remains officially refused.** Because the visa application has already been officially refused, keeping the door open in administrative processing can only benefit, never hurt, the applicant's entry prospects.

*Id.* at *1–2 (emphasis added; footnote omitted).

The appellate court determined that the plaintiff had failed to identify a duty under Section 555(b) of the APA to adjudicate an already refused application:

>Karimova's "matter" has already been "conclude[d.]" 5 U.S.C. § 555(b). Karimova acknowledges that her application was considered by the consular officer and officially refused. A consular officer reviewed her application, interviewed her, and ruled that no visa would be granted.

>Karimova's argument hinges on defining what it means to conclude a visa application in a manner that neither a federal statute nor regulation clearly requires. **She received the "refused" decision that the law expressly authorizes as one of the allowed actions on a visa application.** 22 C.F.R. § 42.81; *see* 8 U.S.C. § 1201(g). **Nothing in federal law speaks to the ability of a consul, after making that decision, to hold onto the application in case circumstances later change in the applicant's favor, thereby saving the applicant the time and cost of filing a whole new visa application**.

>In other words, even on Karimova's reading, **Section 555(b) at most could have entitled her to the official refusal decision she already received**.

**Section 555(b) does not in any way dictate how the agency can handle her rejected paperwork after a decision has been made**.

*Id.* at *4 (record citations omitted; emphasis added).

Moreover, the fact that Plaintiffs submitted additional documents to the U.S. Embassy (post-refusal) does not alter the outcome. *See Ramizi*, 2024 WL 3875041, at *12 ("To the extent a consular officer has any nondiscretionary duty under Section 42.81(e), that duty is only to review information submitted by a refused applicant to determine whether that evidence tends to overcome the ground of ineligibility. But the [c]omplaint contains no allegation that [the] [d]efendants have refused to review the information [one of the plaintiffs] submitted after his application was refused. To the contrary, [the] [p]laintiffs allege that the review is ongoing." (record citations omitted)); *Hemmat v. Blinken*, No. CV 23-2085 (TSC), 2024 WL 4210658, at *4 (D.D.C. Sept. 17, 2024) ("[The] [p]laintiffs' other attempts to identify a source for the duty they claim do not succeed, either. Laws and regulations requiring consular officers 'properly and promptly' process visa applications, making a decision to 'issue' or 'refuse' them when completed, 8 U.S.C. § 1201(g), 22 C.F.R. §§ 41.106, 42.81(a), were satisfied when [the] [p]laintiffs' application were [sic] 'refused[.]'" (citing *Karimova*, 2024 WL 3517852, at *4)).

Because Plaintiffs failed to identify a non-discretionary duty to act on an already refused visa application, the Undersigned **respectfully recommends** that Judge Williams **dismiss** the Complaint [ECF No. 1]. Additionally, and as discussed below, even if the Court were to assume (*arguendo*) that a non-discretionary duty to adjudicate a refused-

16

visa application placed in administrative process *does* exist, the Complaint should still be dismissed because Plaintiffs have failed to allege an unreasonable delay under the APA.

### C.     Unreasonable Delay Claim under the APA

The APA requires agencies to "conclude" matters presented to them "within a reasonable time." 5 U.S.C. § 555(b). If an agency fails to do so, the APA authorizes courts to "compel agency action unlawfully withheld or unreasonably delayed." *Id.* § 706(1).

"When assessing unreasonable delay claims under the APA, courts frequently use the '*TRAC* factors,' a six-factor test articulated by the D.C. Circuit in *Telecommunications Research and Action Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) ("TRAC")." *Mafundu v. Mayorkas*, 699 F. Supp. 3d 1310, 1316 (S.D. Fla. 2023). These factors are as follows:

> (1) the time agencies take to make decisions must be governed by a rule of reason[;] (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason[;] (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority[;] (5) the court should also take into account the nature and extent of the interests prejudiced by delay[;] and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.

*TRAC*, 750 F.2d at 80 (citations and internal quotation marks omitted).

The *TRAC* factor analysis is necessarily fact-intensive. "As a result, courts are split on whether it is appropriate to analyze the *TRAC* factors at the motion to dismiss stage."

*Abou Hala v. Chief, Immigrant Inv. Program Off.*, No. 6:23-CV-1541-PGB-DCI, 2024 WL 4188350, at *5 (M.D. Fla. Sept. 13, 2024).

Here, Plaintiffs argue that "[u]nreasonable delay claims require fact-based inquiries not suitable for disposition at this stage of litigation." [ECF No. 10, pp. 14–15]. But many of the cases cited in Plaintiffs' response applied the *TRAC* factors at the motion to dismiss stage. *See, e.g., Lee v. Blinken*, 23-cv-1783 (DLF) (D. D.C. Feb 15, 2024) (granting Government's motion to dismiss undue delay claim after applying the *TRAC* factors); *Didban v. Pompeo*, 435 F. Supp. 3d 168, 174–75 (D.D.C. Jan. 15, 2020) (same). Moreover, Plaintiffs themselves engaged in a *TRAC* factor analysis and have not identified any specific facts which need to be developed through the discovery process. Thus, Plaintiffs do not provide a compelling reason for why the Court should not analyze the *TRAC* factors at this time. *See Osechas Lopez v. Mayorkas*, 649 F. Supp. 3d 1278, 1287 (S.D. Fla. 2023) (Williams, J.) (on a motion to dismiss, stating that "[i]n this matter, [the] [p]laintiff— the non-movant—briefed the *TRAC* factors in her [r]esponse and accordingly, the Court considers the record appropriately developed to determine whether [the] [p]laintiff has adequately stated a claim for unreasonable delay").

### 1.   Factors 1 and 2

"The first and second *TRAC* factors are 'typically considered together[.]'" *Nascimento v. United States Dep't of Homeland Sec.*, 689 F. Supp. 3d 1245, 1250 (S.D. Fla. 2023) (quoting *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 317 (D.D.C. 2020)). "Of the two

factors, the first—whether a "rule of reason" guides the agency—is the most important." *Id.*

Plaintiffs argue that the first factor falls in their favor because "there is no claim that Plaintiffs' immigrant visa adjudications are complex or time [c]onsuming." [ECF No. 10, p. 11]. They cite to *Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Pompeo*, No. 18-CV-01388 (TSC), 2019 WL 4575565 (D.D.C. Sept. 20, 2019) and note that in that case, the court determined that the first factor weighed in favor of the plaintiffs because "the D.C. Circuit relied heavily on Congress's intent that, except for certain high-risk cases, [the special immigrant visa ("SIV") applications at issue] should be completed, specifically including background checks and screenings, within [nine] months from the date the applicant submitted the required documentation." *Id.* at 10.

But Plaintiffs' reliance on cases involving visas under the Refugee Crisis in Iraq Act ("RCIA") and the Afghan Allies Protection Act ("AAPA") is unavailing because the process for obtaining those visas is different. *See Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States*, 2019 WL 367841, at *3 (explaining that "[t]o successfully obtain admission into the United States through the SIV program, Iraqi and Afghan nationals must complete fourteen steps."). Moreover, per the 2013 amendments to the RCIA and AAPA, there *is* a congressionally-set nine-month timeline for when applications should be completed, as well as periodic reporting requirements.

*Id.* at *2 (noting that "[a]ll government-controlled steps incidental to issuing the SIVs, 'including required screenings and background checks,' should be completed within nine months after submission of a complete application.").

Plaintiffs have not shown that similar protocols apply to the visa application at issue here.

The second factor considers whether Congress has provided a timetable or other indication of speed. Plaintiffs assert that "Congress has provided its clear intention that any delay in excess of 180 days is unreasonable under TRAC Factor 2." [ECF No. 10, p. 11]. But as one court explained, this 180-day language, found in 8 U.S.C. § 1571(b), "is best interpreted as nonbinding. . . . And a contrary holding would ignore the overwhelming caselaw rejecting unreasonable delay challenges for applications that remained pending well beyond the 180-day window that Congress contemplated in 8 U.S.C. § 1571(b)." *Mohammad v. Blinken*, 548 F. Supp. 3d 159, 167 (D.D.C. 2021) (internal citation and quotation marks omitted); *see also Eljalabi v. Blinken*, No. CV 21-1730 (RC), 2022 WL 2752613, at *5 (D.D.C. July 14, 2022) ("Despite [the plaintiff's] attempt to apply the timeframe established by Congress in 8 U.S.C. § 1571(b)—which states that [the Department of State ("DOS")] must adjudicate immigration benefits within 180 days—to the instant case, there exists no statutory or regulatory framework within which DOS must adjudicate I-130 applications." (record citation omitted)); *Reese v. United States Dep't of State*, No. 1:23-CV-1643-RDP, 2024 WL 3381898, at *2 (N.D. Ala. July 10, 2024) ("[T]here

is no congressionally or administratively prescribed timeframe within which USCIS has a duty to process or adjudicate I-130 petitions." (citing *Alfassi v. Garland*, 614 F. Supp. 3d 1252, 1255 (S.D. Fla. 2022))).

"Absent a congressionally supplied yardstick, courts typically turn to case law as a guide." *Sarlak v. Pompeo*, No. CV 20-35 (BAH), 2020 WL 3082018, at *6 (D.D.C. June 10, 2020). At present, approximately two years have elapsed since the November 2, 2022 refusal. "[C]ourts . . . routinely find that delays of numerous years are not unreasonable." *Sivananthan v. Blinken*, No. CV 23-1181 (CKK), 2023 WL 4885858, at *3 (D.D.C. Aug. 1, 2023). In fact, "[d]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." *Yavari v. Pompeo*, No. 2:19-CV-02524-SVW-JC, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019).

In sum, the first and second factors weigh in favor of the Government.

### 2.    Factors 3 and 5

The third and fifth *TRAC* factors consider whether "human health and welfare are at stake," and the "nature and extent of the interests prejudiced by delay." *TRAC*, 750 F.2d at 80. Plaintiffs state that "[Reyes] is rapidly aging and his U[.]S[.] citizen Plaintiff [d]aughter is waiting for him in Miami to provide the best care for him in his last years." [ECF No. 10, p. 11]. They further state that "[t]here is nothing in the record to show that compelling Defendants to schedule and complete [Reyes'] immigrant visa interview and

the adjudication of his DS-260 immigrant visa application would prejudice them in any way." *Id.* at 12.

The Government argues that "[f]or the third and fifth factors to weigh in Plaintiffs favor, it is not enough that they claim financial, medical, and emotional hardship when many others face similarly difficult circumstances." [ECF No. 12, p. 8 (quoting *Mohammad*, 548 F. Supp. 3d at 168–69 (quotation marks omitted))].

These factors weigh in Plaintiffs' favor. *See Albrecht v. Blinken*, No. 22-CV-1318 (APM), 2023 WL 4488282, at *4 (D.D.C. June 16, 2023), *aff'd*, No. 23-5157, 2024 WL 85917 (D.C. Cir. Jan. 8, 2024) ("The court recognizes that [the] [p]laintiff is harmed by his separation from relatives in the United States").

### 3.    Factor 4

As to the fourth factor, consideration must be given to the effect of expediting Plaintiffs' [P]etition on the USCIS's "activities of a higher or competing priority." *TRAC*, 750 F.2d at 80. The fourth factor alone, may be enough to tip the scales in favor of dismissal:

> Even where all other *TRAC* factors weigh in a plaintiff's favor, a court may "refuse[ ] to grant relief . . . where 'a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain.'" *See Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003) (cleaned up) (quoting [*In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991)]); *see also* [*Otto v. Mayorkas*, No. 8:22-cv-1172, 2023 WL 2078270, at *5 (M.D. Fla. Feb. 17, 2023)] ("[S]witching positions of applicants would 'produce no net gain' in the overall progression of adjudications." (quoting *Mashpee*, 336 F.3d at 1100)).

*Mafundu*, 699 F. Supp. 3d at 1319.

The Government argues that granting "the relief sought by [ ] Plaintiffs would inherently divert resources from other applicants by allowing [ ] Plaintiffs 'to cut the line' and obtain immediate re-adjudication of their visa application." [ECF No. 12, p. 9]. They note that "delay and uncertainty is inherent to the immigration application process and courts are disinclined to place one individual ahead of similarly-situated individuals." *Id.*

This factor weighs heavily in the Government's favor. "[D]eference must be given to the State Department's priority-setting and resource-allocation decisions." *Arab v. Blinken*, 600 F. Supp. 3d 59, 71 (D.D.C. 2022). Moreover, "[a] court should not compel agency action where the result would be merely to expedite the consideration of a plaintiff's request ahead of others." *Ali v. United States Dep't of State*, 676 F. Supp. 3d 460, 471 (E.D.N.C. 2023).

### 4.     Factor 6

The sixth *TRAC* factor provides that "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'" *TRAC*, 750 F.2d at 80 (internal citation omitted). This factor is neutral because Plaintiffs have made no allegations regarding the Government's motivations or any bad faith.

In sum, the balance of the *TRAC* factors weighs in favor of the Government. Thus, the Undersigned **respectfully recommends** that Judge Williams **dismiss** Plaintiff's Complaint [ECF No. 1] for failure to state a claim under Rule 12(b)(6).

Plaintiffs' frustration with the time in which Reyes' case has been in administrative processing is understandable. But courts addressing "visa delays measuring under two years while placed in administrative processing — have consistently held that the lawsuits fail under the *TRAC* factors." *Key v. Palmer*, No. 2:24-CV-01563 AC, 2024 WL 4289582, at *5 (E.D. Cal. Sept. 25, 2024); *Sharifishourabi*, No. CV 23-3382 (RC), 2024 WL 3566226, at *7 (D.D.C. July 29, 2024) ("delay of just over two years [was] not unreasonable").

### D.    EAJA Fees

Lastly, the Government argues that Plaintiffs are not entitled to fees under the EAJA. [ECF No. 8, p. 17]. Because the Undersigned is recommending that Plaintiffs' Complaint be dismissed, it is not necessary to address this argument.

## IV.    Conclusion

For the reasons stated above, the Undersigned **respectfully recommends** that the District Court **grant** Defendants' motion [ECF No. 8] and **dismiss** Plaintiffs' Complaint [ECF No. 1].

If Judge Williams agrees with the Undersigned that there is no non-discretionary duty to adjudicate an already-refused visa application, then the dismissal should be **with**

**prejudice**. *See Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007) ("Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant.").

If, on the other hand, Judge Williams decides to dismiss Plaintiffs' Complaint only for failure to state an unreasonable delay claim (applying the *TRAC* factors), then the dismissal should be **without prejudice but without leave to amend**. *See Key v. Palmer*, No. 2:24-CV-01563 AC, 2024 WL 4289582, at *6 (E.D. Cal. Sept. 25, 2024) (dismissing complaint without leave to amend because the pleading deficiencies could not be cured with additional facts but "without prejudice, such that plaintiff may bring a future action if the delay unreasonably persists"). Moreover, Plaintiffs, who are represented by counsel, have not sought leave to amend. *See Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (*en banc*) ("A district court is not required to grant a plaintiff leave to amend his complaint *sua sponte* when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court.").

## V.      Objections

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with United States District Judge Kathleen M. Williams. Each party may file a response to the other party's objection within fourteen (14) days of the objection. Failure to file objections

timely shall bar the parties from a de novo determination by the District Judge of an issue

covered in the Report and shall bar the parties from attacking on appeal unobjected-to

factual and legal conclusions contained in this Report except upon grounds of plain error

if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140,

149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, on October

21, 2024.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Kathleen M. Williams
All Counsel of Record